IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-81025-TLS |
| ) | |
| TIBURON VIEW APARTMENTS, LP, ) | CHAPTER 11 |
| ) | |
| Debtor. ) | |
| IN THE MATTER OF: ) | CASE NO. BK10-81026-TLS |
| ) | |
| TIBURON POINTE APARTMENTS, L.L.C., ) | CHAPTER 11 |
| ) | |
| Debtor. ) | |

ORDER

Hearing was held in Omaha, Nebraska, on September 17, 2012, regarding the second amended application for payment of administrative fees and expenses, filed by Brian Bidne and Dennis and Diane Walker (Fil. No. 370 in Case No. BK10-81025) and the second amended application for payment of administrative fees and expenses, filed by Brian Bidne (Fil. No. 406 in Case No. BK10-81026), and various objections thereto. J.P. (Sam) King appeared for the debtors; Diana J. Vogt appeared for Brian Bidne, Dennis P. Walker and Diane Walker; Joseph H. Badami appeared for Chapter 11 trustee James A. Overcash; Jerry L. Jensen appeared for the United States Trustee; Warren R. Whitted, Jr., appeared for Fisher Corporation; and Angela L. Burmeister appeared for Ervin and Lorraine Kersten.

Background

These two bankruptcy cases involve two adjacent apartment complexes that used the same management company (Fisher Corporation). Many of the limited partners in Tiburon View Apartments were also members of Tiburon Pointe Apartments. The applicants held equity positions in both properties.

Prior to bankruptcy filing, the applicants had commenced an action in the District Court of Sarpy County, Nebraska, to, among other things, have a receiver appointed for the apartments. They asserted that the management company and its president, Todd Fisher, diverted revenues from the properties, caused the properties to become in default to their lenders, and failed to operate pursuant to the applicable partnership agreement and/or operating agreement. Foreclosure proceedings had also been commenced by secured creditors.

The bankruptcy filing stayed the foreclosure and the receivership actions and moved the disputes between the movants and Fisher into this court. During the course of this bankruptcy case, the applicants objected to virtually every action or proposed action by the debtors. By September 2010, applicants had filed a motion to appoint a Chapter 11 trustee which was settled when the debtors agreed to hire a new property management company. Subsequently, the properties were sold free and clear of liens and the secured and unsecured creditors were all paid in full. Funds from the

sale proceeds remain on hand in both cases to pay administrative expense claims and for distribution to equity interest holders.[1]

Following the closing of the sale, the United States Trustee filed motions to convert the cases to Chapter 7. In response, the debtors sought to dismiss their bankruptcy cases. All such motions were resisted and after a hearing, the court denied the debtors' motions to dismiss and granted the United States Trustee's alternative request for appointment of a Chapter 11 trustee in lieu of conversion to Chapter 7. James A. Overcash was appointed as the Chapter 11 trustee. Thereafter, the trustee negotiated a settlement between the bankruptcy estates and Fisher Corporation regarding the financial transactions that occurred during the time period when Fisher Corporation was the manager of the apartment complexes. The settlement agreement basically required a monetary payment from Fisher Corporation along with a termination of any ownership interest held by Fisher Corporation in the debtor entities. The applicants now seek to be awarded a total of $58,960.20 in legal fees and $49,375.38 in expenses (of which $41,333.36 relates to forensic accounting expert expense) for a total administrative expense claim of $108,335.58. Applicants further propose that 37% of that amount be allocated to the Tiburon View estate and 63% allocated to the Tiburon Pointe estate. Applicants assert that their efforts, and the fees and expenses they incurred, provided a substantial contribution and benefit to the estate of each debtor, including discovery of conversion of funds, appointment of a trustee, prevention of dismissal, prevention of further conversion or wrongful acts, and enhancement of the estate through the settlements reached by the trustee.

For the reasons set forth below, the application is denied.

## DISCUSSION

11 U.S.C. § 503(b)(3)(D) provides: "After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary expenses . . . incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." The substantial contribution must be to "a successful result, that is, an actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." *Mfrs. Hanover Trust Co. v. Bartsh (In re Flight Transp. Corp. Sec. Litig.,* 874 F.2d 576, 582 (8th Cir. 1989) (quoting *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 569 (Bankr. D. Utah 1985)). One bankruptcy court described the scope of § 503(b) as follows:

> Despite the statute's non-limiting language and the court's latitude, section 503(b) is not limitless and "should be narrowly construed to maximize the value of the estate for the benefit of all creditors." *In re White Rock, Inc.,* No. 01–44553M, 2002 WL 32114479, at *2 (Bankr. E.D. Ark. 2002) (quoting *Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indust. Inc.),* 19 F.3d 1371, 1377 (11th Cir. 1994)). "This premise preserves the presumption that the debtor has limited

---

[1]The funds in the Tiburon View case are $328,310.56 and the funds in the Tiburon Pointe case are $425,006.46.

>resources to be equally distributed among his creditors . . . ." *In re Cheatle,* 150 B.R. 266, 270 (D. Colo. 1993). Therefore, "only those creditors that perform services that are actual and necessary to preserve the bankrupt estate . . . should be given . . . administrative priority." *Id.* Thus, this court's analysis necessarily "focuses on the actual benefit conferred upon the estate, not the loss sustained by . . . creditors." *Id.*

*Rice v. Bennett (In re Supermarket Investors, Inc.)*, 441 B.R. 333, 343 (Bankr. E.D. Ark. 2010).

The Eighth Circuit Court of Appeals has recognized that "priority statutes are strictly construed" because their allowance could reduce the recovery for other claimants. *Flight Transp. Corp. Sec. Litig.*, 874 F.2d at 581.

Here, the applicants assert that their expenditure of legal fees and expenses resulted in the discovery of the pre-petition conversion of the debtors' funds, appointment of a trustee who was able to negotiate a beneficial settlement, prevention of dismissal and prevention of further conversion. However, as previously indicated, the applicants are equity investors in the debtor entities who had commenced litigation against the debtor's manager, Fisher Corporation, prior to bankruptcy filing. That raises the bar even higher since an attorney seeking compensation under § 503 must have provided services "on behalf of the reorganization, not just on behalf of the client's interest." *In re Two Plus Two, Inc.*, Case No. 4-86-1967, 1988 WL 120646, at *3 (Bankr. D. Minn. Nov. 7, 1988); *In re Villa Luisa, LLC*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) (the burden of proof is on the applicant and it is exceedingly difficult because a litigant is presumed to act in its own interest).

There is no doubt that the applicants were acting in their own interest – they had even commenced litigation prior to bankruptcy filing, raising all of the same issues they raised during the bankruptcy case. They were interested in protecting their equity investments. The question is whether their actions in the bankruptcy case resulted in a substantial contribution to the estate. The skirmishes between the applicants and the debtors commenced early and continued often. They objected to every cash collateral motion (even though they did not have an interest in the cash collateral) and every disclosure statement filed by the debtors. Due to their claims against Fisher Corporation, they also expended efforts to remove Fisher from management of the apartments.

As an initial matter, it would be presumptuous to say that removing Fisher from management resulted in the prevention of further conversion or wrongful acts – it presumes that Fisher Corporation would have engaged in such acts during the course of the bankruptcy case. Frankly, that seems doubtful since Fisher was well aware that the applicants had already made the allegations in state court and nothing that occurred during the case would lead to the conclusion that it was engaging in any nefarious activity post-filing.

In addition, the applicants believe that their efforts resulted in enhancement of the bankruptcy estates through the relinquishment of any ownership interests by Fisher and the payment by Fisher of certain funds into the estates. While it seems likely that Fisher Corporation probably would not have entered into a settlement on those terms absent the constant pressure by applicants both before and after bankruptcy filing, it is impossible to say whether that result actually benefitted

the estate. A few months after filing, the debtors filed their first disclosure statements and plans. Under those documents, the debtors indicated they had no present intent to sell the properties as they were almost fully leased and were producing excellent cash flows. Further, the plans provided for a substantial reduction in the ownership interests of Fisher Corporation and, it seems, the applicants would have retained any claims they have against Fisher Corporation as Fisher was not in bankruptcy. Would the creditors and equity holders be better off under that plan (or a negotiated settlement version thereof) rather than the ultimate sale and settlement of the Fisher claims negotiated by the trustee? That is impossible to say.

The aggressive actions by the applicants resulted in the ultimate sale of the property, the appointment of a trustee and the settlement with Fisher Corporation. However, as discussed above, it is impossible to measure whether that actually resulted in a substantial contribution to the estate. Certainly, it produced a different result than the debtors had in mind initially, but it was not necessarily beneficial to the estate. "Different" is not necessarily "better." Even the forensic accounting report (which accounts for more than $40,000.00 of the expenses claimed by applicant) cannot be said to have provided a benefit to the estate since the trustee said he had not seen it at the time of the settlement. An applicant must "establish his entitlement to an award 'by demonstrating by a preponderance of the evidence that a "substantial contribution" was made.'" *In re NWFX, Inc.*, 67 B.R. 118, 251 (Bankr. W.D. Ark. 2001) (quoting *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 249 (Bankr. D. Colo. 1990)). The movants have not made that showing here. Accordingly, the applicants are not entitled to an administrative expense claim under 11 U.S.C. § 503(b).

Turning now to the applicants' alternative theory – the "common fund doctrine" under Nebraska law is a long-standing equitable remedy at common law which permits an attorney who recovers or preserves a fund in which multiple parties have an interest to be compensated from that fund when his services "are rendered on behalf of, and are a benefit to, the common fund." *United Services Auto. Assn. v. Hills*, 109 N.W.2d 174, 177 (Neb. 1961).

> [W]here one has gone into a court of equity, and, taking the risk of litigation on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs and expenses of the litigation, including reasonable fees to complainant's counsel[.]

*Blacker v. Kitchen Bros. Hotel Co.*, 273 N.W. 836, 838 (Neb. 1937).

However, "[t]he scope of application of this 'common fund doctrine' is limited and generally is applied only for 'dominating reasons of justice.'" *United States v. Olson*, 4 F.3d 562, 566 (8th Cir. 1993) (citing *Riddle v. Hudgins*, 58 F. 490 (8th Cir. 1893) and *Linn v. Linn*, 21 N.W.2d 283 (Neb. 1946)); *see also Entergy Ark., Inc. v. Nebraska*, 226 F. Supp. 2d 1174, 1182-83 (D. Neb. 2002) (observing the principle that claims under the doctrine are appropriate only "in exceptional cases and for dominating reasons of justice"). The Eighth Circuit Court of Appeals ruled that the attorneys in the *Olson* case were not entitled to invoke the common fund doctrine because their work had not created the fund, through a judgment or settlement, for example. 4 F.3d at 566. The court discounted the argument of the applicants, who had formerly represented the debtor, that their legal services

made it possible for the debtor to obtain financing and plant and harvest a crop, resulting in the escrowed proceeds in which they claimed an interest. The court said, "If this argument has merit, one might also meritoriously argue that *any* service of a lawyer to a business client would entitle the lawyer to an equitable lien on the client's subsequent earnings. Such is not the law, nor, in the court's opinion, should it be." *Id.*

The applicants' arguments in this case fit squarely within the *Olson* rationale. They did not "create" a common fund for the benefit of the estates' creditors. Rather, as noted above, their actions forced an outcome that may or may not have benefitted the estate. As the Court of Appeals indicated, not every legal or professional service rendered warrants the creation of an equitable lien. No "dominating reasons of justice" exist here to support the application of the common fund doctrine in favor of the applicants.

IT IS ORDERED: The second amended application for payment of administrative fees and expenses, filed by Brian Bidne and Dennis and Diane Walker (Fil. No. 370 in Case No. BK10-81025) and the second amended application for payment of administrative fees and expenses, filed by Brian Bidne (Fil. No. 406 in Case No. BK10-81026) are denied.

DATED:     October 22, 2012

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*Diana J. Vogt
J.P. (Sam) King
Warren R. Whitted, Jr.
Joseph H. Badami
Angela L. Burmeister
United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.